UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In re D.A. ELIA CONSTRUCTION CORP.

                Debtor-Appellant,


      v.

                                    DECISION AND ORDER
                                    04-CV-975A

DAMON AND MOREY, LLP,

                Defendant-Appellee,


## INTRODUCTION

       Debtor-Appellant D.A. Elia Construction Corp. ("debtor") appeals

from an order of Bankruptcy Judge Michael J. Kaplan entered on October 19,

2004, granting attorneys fees and expenses to Defendant-Appellee Damon and

Morey, LLP ("Damon & Morey" or the "firm"), pursuant to § 330 of the Bankruptcy

Code.  Also before the Court is a motion by non-party L. Andrew Bernheim to

intervene in the appeal.  For the reasons stated, the bankruptcy court order is

affirmed, and the motion to intervene is denied.

## BACKGROUND

On March 30, 1994, the debtor filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code.  On June 15, 1994, the bankruptcy court granted the debtor's motion to employ Damon & Morey as its counsel.

Damon & Morey's representation of the debtor during this Chapter 11 matter spanned almost 10 years.  The firm's work on this proceeding was substantial.  The firm also represented the debtor in numerous other federal and state court lawsuits, as set forth more specifically in the record on appeal.  This included representation of the debtor in over eight federal court actions and a bench trial before the New York Court of Claims.  Damon & Morey acted at the direction of the debtor and its principal, David A. Elia, who is also an attorney.

Damon & Morey obtained favorable results in many of the proceedings.  The firm, working at times in conjunction with other counsel, obtained various judgments and settlements that benefitted the estate.  The firm also successfully objected to numerous claims on the debtor's behalf, which led to expungement of almost $1 million in claims against the bankruptcy estate.

This massive bankruptcy was by all measures a great success.  The total funds collected through the various litigation and settlement proceedings ultimately exceeded the total amount of creditor claims, thereby leaving a surplus in the estate.  All creditors in this case have been paid in full, with the exception

of the firm's claim to attorneys fees and expenses, which is the subject of this appeal.

## I.    Damon & Morey's Fee Applications

A total of six fee applications were made by Damon & Morey.  Each fee application contained itemized time records reflecting: (1) the attorney or paraprofessional rendering services; (2) the person's position or title in the firm; (3) an explanation of the work being preformed; (4) the time spent on those services; and (5) the hourly billable rate for that attorney or paraprofessional.

### A.    Interim Fee Applications

Five of the applications were interim fee applications.  The first interim fee application was filed on September 1, 1994.  Following a hearing on the application, see Bkcy. Dkt. No. 85, Judge Kaplan awarded Damon & Morey $39,188.00 in fees and $2,438.97 in disbursements, for a total of $41,626.97, subject to a 25 percent hold back[1] in the amount of $9,797.00.  See Bkcy. Dkt. No. 86; Damon & Morey Appendix ("D&M App.") at 3, ¶ 4.[2]  These fees were

---

[1]  As is common with Chapter 11 bankruptcy proceedings, the bankruptcy court "held back" a percentage of the interim fee award.  This practice permits the bankruptcy court to adjust the final fee allowance at a later date, if necessary, when the results of the firm's efforts are more readily apparent.  See In re City Mattress, Inc., 174 B.R. 23, 27 (Bankr. W.D.N.Y. 1994).

[2]  Damon & Morey Appendix refers to the appendix of documents accompanying the firm's brief on appeal.

offset against a $50,000 pre-petition retainer fee that had been paid by the debtor.

The second interim fee application was filed in July 1995. Following a hearing on that application, see Bkcy. Dkt. No. 177, Judge Kaplan awarded the firm $35,747.13 in fees and disbursements, subject to hold back in the amount of $12,577.10. See Bkcy. Dkt. No. 182; Appellee's Br. on Appeal, at 7.

The third interim fee application was filed on September 8, 1998. Objections to that application were made by the Trustee and by non-party L. Andrew Bernheim, but not the debtor. Following a hearing on the application, see Bkcy. Dkt. No. 423, Judge Kaplan awarded $150,000 in fees and $4,738.23 in disbursements, subject to a hold back in the amount of $109,072.00. See Bkcy. Dkt. No. 424. Judge Kaplan deferred ruling on $121,509.00, as well as $22,374.10 which had been previously been deferred, and ruled that the objections would be denied without prejudice to renewal when the distribution was made. Id.

The fourth interim fee application was filed on August 11, 1999. Following a hearing on the application, see Bkcy Dkt. No. 604, Judge Kaplan approved partial compensation in an amount to be agreed upon by the debtor and Damon & Morey, not to exceed $200,000. Ultimately, $125,000 in fees and $3,207.90 in disbursements were paid per agreement of the debtor and Damon & Morey. See Bkcy. Dkt. No. 607; D&M App. at 6, ¶ 12.

4

The fifth interim fee application was filed on August 17, 2000. Following a hearing on the application, <u>see</u> Bkcy. Dkt. No. 679, Judge Kaplan granted Damon & Morey partial compensation in the amount of $30,000 in fees and disbursments, and deferred ruling on the $123,994.42 balance.  <u>See</u> D&M App. at 6-7, ¶ 14.

### B.    Sixth and Final Fee Application

In June 2004, Damon & Morey filed its sixth and final fee application ("final fee application").  That application sought legal fees and disbursements in the amount of $87,671.20, for the period from August 1, 2000 through September 30, 2003, as well as the outstanding balance of $271,085.42, as to which the bankruptcy court had previously held back compensation or deferred ruling upon. <u>See</u> Bkcy. Dkt. 713; D&M App. at 7, ¶ ¶ 15-16..

On September 1, 2004, the debtor filed objections to the  final fee application.  <u>See</u> Bkcy. Dkt. No. 728.  The gravamen of its objections was that the firm had committed malpractice and had labored under various conflicts of interest, thereby making an award of attorneys fees improper.  The debtor also sought disgorgement of fees previously awarded to the firm.

On September 7, 2004, Damon & Morey filed a detailed response to the objections wherein it strenuously denied the debtor's allegations of malpractice and misconduct.  That response was supported by an affidavit of

William F. Savino, Esq., who had acted as lead counsel for the debtor.  See Bkcy.
Dkt. No. 729.

On September 8, 2004, the parties appeared before Judge Kaplan
for a hearing on the final fee application and the debtor's objections.  Following
the hearing, Judge Kaplan afforded the debtor an opportunity to provide further
briefing and evidence in support of its objections.  On October 18, 2004, the
debtor filed a supplemental brief and an affidavit from David A. Elia.  See Bkcy.
Dkt. Nos. 733, 734.  On October 19, 2004, Judge Kaplan issued an order
granting Damon & Morey's final fee application in full, including payment of all
fees previously withheld or deferred (the "October 19[th] Order").  See Bkcy. Dkt.
No. 735.  Judge Kaplan found that the debtor's allegations of malpractice lacked
credibility and were belied by the record.  He characterized the objections as
simply a "gambit" by the debtor to avoid paying counsel fees.  Id.  He also
rejected the debtor's request for a full evidentiary hearing.[3]


## II.    Debtor's Appeal of Bankruptcy Court Order

On October 26, 2004, the debtor filed a notice of appeal from Judge
Kaplan's October 19th Order.[4]  The debtor filed his appeal brief on April 15, 2005.

---

[3]   Judge Kaplan further elaborated on his ruling at a hearing on November 3, 2004.  A
transcript of that hearing has been included in the record on appeal and considered by this
Court.

[4]   The notice of appeal was not docketed in this Court until December 7, 2004.

On May 2, 2005, Damon & Morey filed an appellee brief, and on May 20th, the debtor filed a reply.  On June 23, 2005, the Court heard oral argument on the appeal and the appeal was deemed submitted.

### III.     Motion to Intervene by L. Andrew Bernheim

On August 12, 2005, seven weeks after the appeal had been submitted, non-party L. Andrew Bernheim ("Bernheim") filed a motion to intervene in the appeal.  Both the debtor and Damon & Morey filed responses in opposition to that motion.  The motion was deemed submitted on November 28, 2005, without oral argument.[5]

### DISCUSSION

### I.     Motion to Intervene

In his motion to intervene, Bernheim claims that he is the "sole shareholder" of the debtor, and seeks to intervene in the appeal for the purpose of conducting "full discovery" and a "plenary hearing" relating to Damon & Morey's fee applications.  See District Court Dkt. No. 12, at 1.  Bernheim seeks intervention as of right, or alternatively, permissive intervention.  Both the debtor and Damon & Morey oppose the motion to intervene.

---

[5]  Thereafter, Bernheim sought leave to file a reply in support of his motion to intervene. The Court finds that a reply is unnecessary and the motion (District Ct. Dkt. No. 19) is hereby denied.

At the outset, the Court finds that the motion to intervene is untimely. The record reflects that Bernheim was aware of the pendency of the instant bankruptcy appeal for several months before seeking to intervene.  According to a declaration of attorney John Donogher from Damon & Morey,  in May 2005, he had several conversations with Bernheim and his counsel, Merrill Rubin, Esq., wherein each expressed an awareness of the appeal relating to the fee applications.  Despite this knowledge, Bernheim waited more than three months after those conversations before filing his motion.  By the time the motion was filed, the appeal had been fully briefed, argued and submitted to this Court. Assuming *arguendo* that Bernheim has standing to participate in the instant appeal, he has simply waited too long to do so.

More significant, however, is Bernheim's complete failure to raise any objections to the final fee application in the bankruptcy court.  Bernheim was aware of the bankruptcy proceedings and had participated in them intermittently. He filed timely objections to the third interim fee application, but his objections were denied without prejudice to raising them in connection with the final distribution.  If Bernheim had any interest in challenging Damon & Morey's final fee award, he should have done so in bankruptcy court in the first instance. Bernheim's failure to raise timely objections to the final fee application in

bankruptcy court precludes him from doing so on appeal.[6]  See Baker v. Dorfman, 239 F.3d 415, 420 (2d Cir. 2000) (noting that, as a general rule, appellate courts do not consider issues that were not raised at the trial level); see also In re D.A. Elia Constr. Corp., No. 99-CV-0546E, 2000 WL 1375739, at *7 (W.D.N.Y. Sep. 22, 2000) ("[I]ssues not raised in the bankruptcy court cannot generally be raised for the first time on appeal"); In re Pappas, 239 B.R. 448, 453 (E.D.N.Y. 1999) ("As a general rule, an appellate court will not address arguments that initially were not presented to the lower court.").

In addition to being untimely, the motion lacks merit.  Bernheim cannot intervene because he lacks standing to pursue this appeal.  "[I]n order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved--a person directly and adversely affected pecuniarily by the

---

[6]  Bernheim alleges that he failed to file timely objections because he never received notice of the final fee application.  The record reflects that notice of the final fee application was duly served upon Bernheim at the most recent address provided to the bankruptcy court.  See Dkt. No. 16 (Decl. of Daniel F. Brown in Opposition to Motion to Intervene), at ¶¶ 21-28 and Exh. D.  See also Bkcy. Dkt. No. 279 (letter from Bernheim filed November 26, 1997, listing his new address as c/o Howard Johnson Express Inn, 625 Route 46 East, Parsippany, NJ 07054).  Additionally, a copy was also mailed to Bernhiem's prior address at 14 Easton Ave, P.O. Box 164, New Brunswick, New Jersey, 08901.  Although Bernheim claims that he notified the bankruptcy court of a change of address on several occasions thereafter, there is nothing in the bankruptcy court docket sheet to support this contention.  Nor has he provided this Court with copies of his correspondence requesting that his address be changed.  Bernheim claims that he was precluded from updating his address due to Judge Kaplan's September 18, 1998 Order requiring that all further correspondence to the bankruptcy court be made via formal motion.  This cannot be the basis for his failure to provide a current address as the record reflects that he filed numerous documents with the bankruptcy court after that date.  See e.g. Bkcy. Dkt. Nos. 488, 540, 541.  In any event, the burden is on him, not the bankruptcy court, to ensure that his address remains current.  His omission in this regard cannot excuse his failure to timely file objections to the final fee application.

challenged order of the bankruptcy court." <u>See</u> <u>In re O'Brien</u>, 184 F.3d 140, 142

(2d Cir. 1999) (internal quotations omitted); <u>International Trade Admin. v.</u>

<u>Rensselaer Polytechnic Inst.</u>, 936 F.2d 744, 747 (2d Cir. 1991) (internal

quotations omitted); <u>see also</u>  <u>Kane v. Johns-Manville Corp.</u>, 843 F.2d 636, 642

(2d Cir. 1988) ("[A] party to the bankruptcy proceedings is permitted to appeal a

particular order only if the order directly affects his pecuniary interests.").  This

doctrine "reflect[s] the understandable concern that if appellate standing is not

limited, bankruptcy litigation will become mired in endless appeals brought by

the myriad of parties who are indirectly affected by every bankruptcy court order."

<u>Kane</u>, 843 F.2d at 642.

Although Bernheim claims to be the is the "sole shareholder" of the

debtor, that claim is speculative at this juncture and is currently the subject of

litigation pending in another court in this District.  <u>See</u> <u>Bernheim v. David Elia</u>, et.

al, 05-CV-118E.[7]  Unless and until he is adjudicated as an actual shareholder, he

lacks a direct and adverse pecuniary interest in the challenged bankruptcy court

order.  Because Bernheim lacks standing to appeal, there is no basis for granting

him leave to intervene.

---

[7]    In that case, Bernheim seeks relief in the form of a declaratory judgment
adjudicating him as the sole shareholder of the debtor, or alternatively, a partial shareholder.
On January 10, 2006,  Hon. John T. Elfvin granted a motion dismissing the action without
prejudice.

## II.   **Merits of the Appeal**

### A.   *Standard of Review*

Section 330 of Title 11 of the United States Code authorizes a

bankruptcy court to award

> (1) reasonable compensation for actual, necessary
> services rendered by . . . [an] attorney, and by any
> paraprofessional persons employed by [such attorney];
> and
>
> (2) reimbursement for actual, necessary expenses.

See 11 U.S.C. § 330(a) (1988).  A bankruptcy court has considerable discretion

in determining reasonable fee awards and a fee award will not be disturbed

absent a showing that the bankruptcy court abused its discretion.  See In re JLM,

Inc., 210 B.R. 19, 23 (2d Cir. BAP 1997).  "An abuse of discretion arises where

(1) the bankruptcy judge fails to apply the proper legal standard or follows

improper procedures in determining the fee award, or (2) bases an award on

findings of fact that are clearly erroneous."  Id. (quoting In re Hunt, 196 B.R. 356,

358 (N.D. Tex. 1996)); see also Fed. R. Bankr. P. 8013.[8]

---

[8]  Rule 8013 of the Federal Rules of Bankruptcy Procedure provides:
On an appeal the district court or bankruptcy appellate panel may
affirm, modify, or reverse a bankruptcy judge's judgment, order, or
decree or remand with instructions for further proceedings.
Findings of fact, whether based on oral or documentary evidence,
shall not be set aside unless clearly erroneous, and due regard
shall be given to the opportunity of the bankruptcy court to judge
the credibility of the witnesses.

A bankruptcy court's conclusions of law are reviewed *de novo*, while factual conclusions are reviewed for clear error. <u>See</u> <u>In re JLM, Inc.,</u> 210 B.R. at 23. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." <u>Id.</u> (quoting <u>Anderson v. City of Bessemer</u>, 470 U.S. 564, 573 (1985)).  The issue is not whether this Court might have ruled differently if presented with the same evidence, but whether there is a reasonable basis in the record to support the bankruptcy judge's decision. <u>Id.</u>  The law recognizes that the bankruptcy judge "'is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails.'" <u>In re Angelika Films 57th, Inc.,</u> 246 B.R. 176, 178 (S.D.N.Y. 2000) (quoting <u>In re Martin</u>, 817 F.2d 175, 182 (1st Cir. 1987)).

### B.     Bankruptcy Court Applied the Proper Legal Standard

The debtor argues that the bankruptcy court erred because it failed to apply "any legal standard" in determining the fee award. <u>See</u> Debtor's Appellate Brief, Dist. Ct. Dkt. No. 7, at 12-14.  Clearly, this is incorrect.  The bankruptcy court's award of attorneys' fees was made pursuant to its authority under § 330 of the Bankruptcy Code.  Section 330 sets forth the criteria to be considered in determining the appropriate compensation for professional services rendered.  The statute provides:

(3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. at § 330(a)(3).  There is no evidence that the bankruptcy court misapplied this section or that it failed to consider any of the foregoing factors.

Alternatively, the debtor claims that the bankruptcy court erred by failing to apply the "lodestar" analysis.  The lodestar analysis represents the number of hours reasonably worked on a case multiplied by the reasonable hourly rate.  Wells v. Bowen, 855 F.2d 37, 43 (2d Cir. 1988).

Section 330 of the Bankruptcy Code incorporates the lodestar analysis by requiring that the bankruptcy court consider the time spent upon legal services and the rate charged for those services. See 11 U.S.C. § 330(a)(3). Section 330 also requires the court to take into account other factors, such as the benefit of the services to the bankruptcy estate. See 11 U.S.C. § 330(a)(3).

It is clear that the bankruptcy court performed the lodestar analysis in this case. The final fee application provided the bankruptcy court with all of the information necessary to make the required calculation. In Matter of Hunt's Health Care, Inc., 161 B.R. 971, 980 (Bankr. N.D. Ind. 1993), the Court explained the requirements for a proper fee application under § 330:

> To be proper, the application and its supporting documentation should be complete and self contained and include all of the relevant information the applicant would initially like the court to consider concerning the nature and the value of the services it provided. This requires the applicant to separately itemize and describe any expenses, the services for which compensation has been sought and the amount of time devoted to them; it must also identify each attorney or paraprofessional involved and their applicable hourly rates. Depending upon the size and complexity of the application and the range of services covered by it, this may require the applicant to separately categorize the time involved in order to ensure that the application does not become an incomprehensible mass of undifferentiated chronological data.

Id. at 980.

14

Each of Damon & Morey's fee applications met the foregoing requirements.  Each application contained a detailed itemization in accordance with the lodestar methodology.  The applications provided a description of the work performed, identified the person performing the work and his or her title, set forth that person's billable hourly rate, and indicated the time spent performing the specific task.  The fee applications also included a chart summarizing the amount of time spent by each individual for the entire application period, multiplied by his or her hourly rate, culminating in a global figure for all of the work performed within that application period.  As to expenses, the fee applications provided a detailed accounting of all fees expended, the date upon which the charge was incurred, and a description of the basis for the charge (e.g. postal charges, court reporting fees, photocopy expenses, etc.).

In addition to the foregoing, the final fee application provided the bankruptcy court with a summary of the amounts previously authorized or held back in earlier fee applications.  It also outlined the global results achieved by the firm throughout the bankruptcy and related proceedings.  In other words, the application summarized for Judge Kaplan "what was actually accomplished with all this time and effort."[9]  Id.

Because the fee application set forth the lodestar analysis, Judge

---

[9]  Of course, having presided over this massive bankruptcy proceeding for almost ten years, Judge Kaplan no doubt was already familiar with the nature and quality of the work performed, and the results that were obtained.

15

Kaplan had all of the information necessary in the application itself.  There was no need for Judge Kaplan to reiterate the calculations in his October 19th Order, particularly since no party was objecting to the mathematical accuracy of the calculations.  The bankruptcy judge's approval of the final fee application reflects his determination that the amount sought therein, i.e. the product of the lodestar analysis as contained in the application, was reasonable, necessary, and ultimately beneficial to the estate.  It is clear that Judge Kaplan properly applied the requirements of § 330 and the lodestar analysis.  As such, the debtor's contention that the bankruptcy court failed to apply the proper legal standard is without merit.[10]

### C.    Bankruptcy Court Applied the Proper Procedures

The debtor argues that the bankruptcy court erred in failing to conduct a full evidentiary hearing on its objections.

Pursuant to section 330, the bankruptcy court must afford any party in interest "notice . . . and a hearing" before awarding attorneys fees.  See 11 U.S.C. § 330(a)(1).  Section 330 does not prescribe what is meant by the phrase

---

[10]    Similarly, the Court rejects the debtor's argument that the bankruptcy court erred in failing to consider the so-called  "Johnson factors" (referring to the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).  The Supreme Court has expressed a preference for using the lodestar approach over the Johnson factors, explaining that "the loadstar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee."  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566 (1986).  Accordingly, there was no need for the bankruptcy court to separately discuss the Johnson factors.

"notice . . . and a hearing."  However, section 102 of the Bankruptcy Code does.

It provides:

> (1) "after notice and a hearing", or a similar phrase [as used in the Bankruptcy Code] --
>
>> (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances . . . .

11 U.S.C. § 102.[11]

Hence, pursuant to § 102, the particular circumstances of the proceeding dictate the type of hearing necessary.  Contrary to the debtor's assertion, there is no requirement that the hearing be a full evidentiary hearing. In fact, another Judge in this District decided that very issue on a related appeal from this bankruptcy proceeding.  See In re D.A. Elia Constr. Corp., No. 99-CV-0546E, 2000 WL 1375739, at *5 (W.D.N.Y. Sept. 22, 2000) ("Neither the Bankruptcy Code nor the [Federal Rules of Bankruptcy Procedure] required the bankruptcy court to hold a full evidentiary hearing.").  All that is required is that the party in interest be afforded a meaningful opportunity to be heard on its objections.  See Turney v. Federal Deposit Ins. Corp., 18 F.3d 865, 868 (10th Cir. 1994); In re Pfleghaar, 215 B.R. 394, 397 (8th Cir. BAP 1997).

The debtor was given a meaningful opportunity to be heard.  It was

---

[11]  That section also authorizes the bankruptcy court to act without a hearing under certain circumstances that are not applicable here.  Id. at § 102(1)(B).

permitted to file written objections to the final fee application.  It was also provided

with an opportunity to articulate its objections during oral argument before the

bankruptcy court.  Following oral argument, the debtor was afforded an additional

opportunity to present further submissions and evidence in support of its

objections.  The bankruptcy court's decision to deny a full evidentiary hearing was

not an abuse of discretion.  The nature of the hearing lies within the sound

discretion of the bankruptcy judge, <u>Wachovia Bank of Georgia, N.A. v. Apex Tech</u>

<u>of Georgia, Inc.</u>, 144 B.R. 649, 653 (S.D.N.Y. 1992), and does not necessarily

require the presentation of oral testimony.  The bankruptcy court was free make

credibility findings and to reject the debtor's objections based upon the affidavits

of the respective parties and upon his global familiarity with the bankruptcy

proceeding.  Because the debtor was afforded a full opportunity to articulate its

position and provide evidence in support thereof, the Court finds no error with the

nature of the hearing.


### D.      Factual Determinations are Not Clearly Erroneous

To the extent that the debtor is challenging the amount of fees

awarded as unreasonable, that is a factual determination by the bankruptcy court

that is subject to a clearly erroneous standard of review.  The Supreme Court has

instructed that there is a "strong presumption" that "the lodestar figure--the

product of reasonable hours times a reasonable rate-- represents a 'reasonable'

18

fee" to which the applicant is entitled.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); see also Blum v. Stenson, 465 U.S. 866, 897 (1984) ("When the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled); In re Blackwood Assoc., L.P., 165 B.R. 108, 111 (Bankr. E.D.N.Y. 1994) (if the fee application "contains all information and detail necessary for a presumption of reasonableness . . . a *prima facie* case for the requested fees has been made").

Having satisfied its entitlement to a presumption of reasonableness, the burden fell upon the debtor to rebut that presumption.  The debtor sought to do so by arguing that the firm was not entitled to *any fees* because it had committed malpractice and had labored under conflicts of interest.  In addition, the debtor argued that many of the fees already paid to the firm were subject to disgorgement as a result of those conflicts.

The bankruptcy court fully considered the allegations of misconduct but found them to be without merit.   As is evident from the record, Judge Kaplan was nothing short of astounded by those allegations.  So much so that, after hearing argument on the objections, he gave the debtor an opportunity to submit further evidence and briefing in support of its position.  After reviewing those supplemental submissions, Judge Kaplan found that the allegations of

malpractice and misconduct lacked credibility and were belied by the record.

Judge Kaplan found particularly telling the debtor's explanation as to why it had

continued to retain Damon & Morey as counsel, year after year after year,

notwithstanding its belief that the firm had committed pre-petition malpractice.

The debtor claimed

> it had no practical alternative and it reasonably believed
> that compensation would eventually be made for the
> malpractice and negligence of Damon & Morey, LLP as
> it related to their performance as counsel for the estate.
> More importantly, Elia let the [s]tatute of [l]imitations run
> on alleged malpractice because it believed that the
> [s]tatute was tolled by express agreement between Elia
> and Damon & Morey, LLP, and furthermore would be
> mooted by the Court's inherent power to adjust
> compensation to Damon & Morey, LLP pursuant to the
> Bankruptcy Code to reflect the reasonable value of the
> actual services provided to benefit the Estate.

See D&M App., at 200, ¶ 224.  Judge Kaplan rejected this explanation, finding no

merit to the debtor's claim that there existed an "express agreement" between the

debtor and the firm to toll the statute of limitations.  Judge Kaplan noted that any

such agreement would have been improper, as it would have turned the

bankruptcy court into a federal forum to adjudicate pre-petition malpractice

claims.  He also found that the debtor's objections were simply a "gambit" to

avoid paying counsel fees.

This Court finds no error in bankruptcy court's ruling as to the

credibility of the debtor's objections.[12]   Like the bankruptcy court, this Court also

finds it simply inconceivable that the debtor would have retained a law firm that it

believed to have committed pre-petition malpractice.  Even more incredible is its

assertion that it continued to retain that firm, year after year after year, even

though it believe that the firm continued to mishandle litigation.  It is also

inconceivable that the debtor would have failed to alert the bankruptcy court of

this purported malpractice for nearly ten years, or that it would have failed to raise

any issue concerning the pervasive conflicts that it claims to have existed and

known about for years before the final fee application was filed.  The debtor's

silence over this ten-year period speaks volumes as to its credibility.

In any event, having presided over this massive reorganization for

nearly ten years, Judge Kaplan was in the best position to evaluate the value of

the services performed by Damon & Morey, the extent to which those services

benefitted the estate, and the extent to which any of the alleged conflicts may

have caused the debtor prejudice.  See In re Suprema Specialties, Inc., 330 B.R.

---

[12]   The bankruptcy court reiterated its credibility determination at a hearing on
November 3, 2004.  The debtor sought to reargue its position, and bankruptcy court rejected
this offer, restating its determination that the objections were merely a "contrivance."  See Tr. of
November 3, 2004 proceeding, at 5.  The bankruptcy court elaborated stating:

It's a crock of baloney.  Can I be any more honest than that?  It's a crock of
baloney.  [Elia] shouldn't have retained Damon and Morey to represent him if he
felt they were guilty of prepetition malpractice.  He shouldn't have continued to
retain them year after year after year and have me listen and observe
the contributions made by the firm over the years to this case, and then ten
years later come in and say, oh well, I had no choice but to retain them.  It's an
insult. . . . It's ridiculous.  Enough.  I can't be any clearer than that.

Id. at 8-9.

21

40, 54 (S.D.N.Y. 2005) ("[T]his Court is not in the same position as the Bankruptcy Judge, who had presided over the underlying bankruptcy for several years, and was thus 'the person most familiar with the circumstances of the case and . . . in the best position to evaluate the good faith and credibility of the parties.'") (quoting Davis v. Musler, 713 F.2d 907, 912 (2d Cir. 1983)).  This Court will not set aside the bankruptcy court's factual determination as to the credibility of the debtor's objections absent clear error.

Moreover, even if Judge Kaplan had found some merit in the debtor's objections, it was entirely within his discretion to award fees despite the alleged conflicts.  Section 328(c) of the Bankruptcy Code provides that the court

> *may* deny allowance of compensation for services and reimbursement of expenses of a professional person . . . . if, at any time during such professional person's employment . . . such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate . . . .

See 11 U.S.C. § 328(c) (emphasis added).  Disallowance of compensation under this section is *permissive*, not mandatory, and lies within the discretion of the presiding bankruptcy judge.  See e.g., In re Granite Partners, L.P., 219 B.R. 22, 41 (Bankr. S.D.N.Y. 1998).  In light of the significant contribution made by Damon & Morey to this bankruptcy proceeding and the overall benefit of that work to the estate, it was not an abuse of discretion to deny the debtor's request for disallowance.

22

## **CONCLUSION**

For the foregoing reasons, the motion to intervene is denied and the

bankruptcy court's October 19, 2004 Order is affirmed.  The appeal is dismissed

and the Clerk of the Court is ordered to terminate all motions and take all steps

necessary to close the case.


IT IS SO ORDERED.

_____  /s/  Richard J. Arcara_____

HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: June 19, 2006